Thank you, Your Honor. May it please the Court. I want to begin where I think the primary issue is that the Court needs to decide, which is the 1326d collateral attack on the prior removal in Mr. Moreno-Tapia's case. And I'm going to talk probably overlappingly about the first two prongs of the test under 1326d because that's how the courts have treated them and I think there's good reason for that. The first two prongs are, of course, exhaustion and the deprivation of judicial review. In this case, we've actually gotten a fairly recent precedent. Judge Traxler was part of that panel just back in 2015. It was a civil matter in Etienne, but the Court was very clear that the expedited removal process that was used in Mr. Moreno-Tapia's case does not provide any meaningful opportunity for an administrative remedy, which is what Mr. Moreno-Tapia would be required to exhaust. Justice Breyer But wasn't the very fact that Etienne was able to petition our Court for review, doesn't that negate the second prong of this analysis? Your client could have done the same thing, right? Judge Traxler I think that the review at that point would have been meaningless in Mr. Moreno-Tapia's case because he didn't have the opportunity at the stage, the administrative stage, to develop any kind of legal record. Justice Breyer But he said in Etienne that the fact that he didn't have the opportunity meant that he could address the issue for the first time before the Court, before our Court. Judge Traxler In Mr. Moreno-Tapia's case, he wasn't even aware of the issue. Justice Breyer Well, that's a different problem. The fact that he wasn't prescient about the existence of Padilla, he could have been Padilla. Judge Traxler He could have, Your Honor, but there was no meaningful opportunity there. If he had exercised the right to judicial review, there would have been no record of anything. All the Court would have been able to do at that point was to say there was no meaningful opportunity for judicial review or no administrative remedy. Justice Breyer I'm not sure I understand that. Why? Judge Traxler There was no opportunity for Mr. Moreno-Tapia when he was in removal proceedings to develop a legal issue. Justice Breyer But that was the same problem with Etienne. Judge Traxler Right. And in Etienne, the Court said the exhaustion prong and the judicial review prong would be excused. Justice Breyer Right. And then we proceeded to hear the merits of his case. So why couldn't your client have done the same thing? Judge Traxler Because in the situation that he was in, he didn't have the legal issues in front of him. The Court couldn't have, there would have been no record for the Fourth Circuit to hear. And I would also argue that under 1326d, what we're talking about is exhaustion of administrative remedies, not exhaustion of judicial remedies. This is not, he's not required to exercise every available provision under law that could have applied to him. It is, did he avail himself of the administrative remedies that were presented to him in the removal process? And multiple courts have held there are no administrative remedies. Effectively, this is an individual sitting across the table from a deportation officer, a person, an executive branch. It's essentially a law enforcement encounter in the civil context. Justice Breyer Let me make sure I understand your point here. So with respect to Etienne, are you saying that because that was purely a legal question, there was no need to develop the record? Our Court decided the merits of Etienne's case, right? Judge Traxler Etienne was a civil matter though. That was a removal case. This is a situation where the question is, did he have a full and fair opportunity to develop that in the context of a criminal charge? So Etienne didn't have the 1326d issues. There was, the decision was, and the portion of Etienne that's relevant for Mr. Moranitopi's case is that the Court said there is no administrative remedy. But that's a prong under the criminal statute that didn't apply to Etienne. So we're in a different posture. We're in a different legal setting than Mr. Etienne was in. And I think there are, the reason that that's more important, I mean, there are... Justice Breyer Your client had the same hearing before the DHS officer that Etienne did, right? Judge Traxler He had the same... Justice Breyer I mean, it wasn't much of a hearing, but... Judge Traxler Well, I wouldn't call it a hearing, but he had the same encounter with a DHS officer. Yes, he did. And he had, you know, the same judicial review component, but he didn't have the same issues as Mr. Etienne had. He didn't have... Justice Breyer I mean, that shouldn't be dispositive. I guess... Judge Traxler Well, I think the fact that... I'm sorry, Your Honor. I didn't mean to cut you off. The fact that it is a, that there is a purely legal issue that could not have been developed in Mr. Moranitopi's case. Remember, he, this is a case where he never saw his written plea agreement. And I think the fact that it took until after he had entered a plea in a criminal case in federal court for this issue to be ferreted out and come to light puts the finer point or puts in higher relief the issue of the lack of process. It's not just that there wasn't a fail-safe somewhere down the road where he could have been in front of a judge. There was no meaningful way for him to have brought this issue to light. I mean, absent the, what actually happened between my client and me, which was, I said, hey, you know, we can't really attack your only prior conviction. You signed a plea agreement. And I took it out, and sure enough, his signature wasn't there. Justice Breyer understand the legal consequences of that plea. But that's a, you know, whether he had a lawyer or not, I suppose he, someone could have figured that out for him at the DHS stage, even if he couldn't have presented it before that officer, right? I'm not sure there is any opportunity to, I mean, I have never gone through the expedited process, but in contrast to a normal removal proceeding, I mean, it's striking. There is, you know, you get an ILJ hearing and you get an appeal to the Board of Immigration Appeals. My guess is, and this is purely speculative, but had he gone through all of that administrative process, there would have been a pretty thorough record in front of this court by the time he sought judicial review, if he sought judicial review. There also would have been an enormous amount more time for him to develop that record. And I think that's critical because the way things actually unfolded, he needed all of that time and then some to get this, to bring this issue to light. And if he had been able to do that in the immigration context, I don't know if it would have come out or not because he wouldn't have had a right to counsel, so he wouldn't have necessarily had a lawyer, but he would have at least had the opportunity to retain immigration counsel, to have somebody look into the immigration, the basis for his removal. And at the immigration phase, to develop a legal counter-argument and to raise, and I think this is important too in his case, which was not present in Etienne. Mr. Moreno-Tapia was eligible to be a legal permanent resident, and he has a colorable argument. I'm not an immigration lawyer, but he has a colorable argument for 212H, cancellation of removal. Whether or not an immigration judge or the Fourth Circuit upholds that or finds that he has the right to relief is a discretionary matter, and we have no idea how that would have played out. But the fact that he had potential remedies, now I'm skipping ahead a little bit maybe to prejudice, but I think it also speaks to the administrative exhaustion and to the judicial review component. It just shows how much was riding on that and how much alighting that whole process affected the outcome of his case. You know, starting really with the state process. I mean, here's a guy who went through a state plea colloquy. I've done state plea colloquies in North Carolina. Normal process is, there's a lot of back and forth. There's a lot of check-in boxes, giving the document to the other party, giving the document to the judge. None of that happened in his case. And so we have a guy, it's not just the... Well, when you say none of that happened, I mean, there was a transcript that reflected that the judge did have a conversation with your client, but apparently omitted the critical question as to the immigration consequences of his plea. Well, and if you look at the plea transcript, there's a written plea transcript, and then there's the transcript of the actual hearing. It's clear from the record that that full discussion of a lot of those things that are contained in the plea transcript is not on paper in the Mr. Moreno-Tapia's state court case was the immigration consequence, because it was the immediate consequence of his guilty plea. But the form that goes through meticulously and says, do you understand this? Do you understand this? Do you understand this? The plea, actual plea colloquy that took place, which is not, the burden is not on the judge there. The government made this point, and we don't contest it, and that it's not a constitutional violation by itself for the judge to fail to do that, but it is an opportunity to cure some of that stuff. So if the judge makes a very deliberate entry of plea at that point, some of this stuff can be fixed. Some of it can be cured, and that didn't happen. Then he, sorry. I feel like I'm just getting a bit mixed up. So what's the BIA supposed to do about that? I mean, is it when they're doing a deportation proceeding, do they need to go get the paperwork from the original conviction and look it over? I don't understand how these two things fit together. And my larger concern is the sort you are having with Judge Diaz goes to my real concern about this case, which is that these factors and Mendoza-Lopez, I mean, as you yourself are saying, those are about something else. That's about sort of a procedural due process problem. Was the process procedurally defective due to foreclosed judicial review? But you're raising a different kind of claim than any of these other ones. Your claim is about the underlying conviction itself, and I don't understand how that even fits under the 1326D factors. Your Honor, it is different, and I couldn't find, frankly, a case on all fours with this, but I think it's identical in terms of the ultimate question, which is prejudice. Should somebody who has been through the process that this person has been through be subject to a criminal sanction based on that process? Substantive due process. Exactly, Your Honor. Fundamentally unfair to sanction him, given that the conviction. That's exactly right. And I think the reason I refer back to the state court thing as the origin is not just because that's where, Padilla is the headline, but it's not really the substance in some ways of this case. Padilla is supposed to be a corrective to what happened in some ways to Mr. Moreno Tapia. But what we're really talking about is a fundamental failure of that process. So what happened to him, somebody who has never seen their written plea and goes through not one, not two, but three processes, that shouldn't happen. Now, didn't the Supreme Court hold in, is it Custis, that when it comes to sort of a substantive due process claim, like it's just totally unfair to penalize me based on a conviction that has been shown to be constitutionally defective. The only kind of problem we will recognize in the underlying conviction is, I think there it was just absolute denial of right to counsel in violation of Gideon, but that kind of structural problem. Well, Your Honor, and the claim here, though, is not simply a Fifth Amendment substantive due process claim in the Federal Court. The claim here is, what are the criteria for 1326D collateral attack, and does he meet them? And so I guess, I think, if I'm not mistaken, what Judge Harris, what you're asking is, is under prejudice, would effectively fall under prejudice. Where is the- What I'm really suggesting is that he doesn't make 1326D because those are about a procedural defect in the deportation hearing itself, so that what you actually have is a substantive due process claim quite apart from those factors. Well, I think that, well, that's a, I think there is an argument under the Fifth Amendment for a substantive due process claim. I also think he meets the 1326D, and here's why. It's not just a generalized broad brush, you know, it touches the Fifth Amendment, and therefore it's all infected. He actually meets each individual part of that prong, and part of that is the expedited process. I mean, I didn't include Judolong just as a throwaway because, you know, it sounds good, and I understand this is not an APA case, and I'm, you know, the, the, the appellant is not asking the court to sit in review of an administrative procedure that, that it wasn't raised in the administrative process, but if we are going to say this process is what qualifies under 1326D, and we're okay with that, and this removal can't be collaterally attacked, that's, I think that's problematic if that process is, in fact, arbitrary and capricious. I mean, this is a guy who could just as easily have been placed into a full removal proceeding and wasn't. So there is something really arbitrary at work here that, that decided in advance that he wasn't going to get additional process. I can't recall your substantive due process argument in your brief. Is that covered? No, Your Honor. I was just responding to Judge Harris' question. I think you could make the argument that, in some ways, it's really an argument about what's the nature of the underlying relief, I mean, the underlying MAR relief at the state level. Is this really a Padilla claim, a Sixth Amendment claim, or is this really a Fifth Amendment claim? And to me, a person whose written plea agreement was never reviewed, that certainly supports a Sixth Amendment argument. But I also think there's, there is an argument to be made that going through an entire plea colloquy based on a written plea agreement that the person never saw until 2012 when they were charged criminally in federal court raises substantive due process concerns. And, and it raises them not just because of that initial violation, but because that carries over. It has this cascading effect into the administrative process, which is incredibly brief. And in Mr. Moreno-Tapia's case was actually abbreviated. He was, he was removed only eight days after the order in violation of the statute. So whatever little administrative opportunity he had to, to develop something was actually cut off when he was removed to Mexico. And then. The state court did say that it was, the problem here was a violation of Padilla, right? The state court mentioned Padilla, but actually said it was a Fifth Amendment violation. Well, it said it's not sufficient. It didn't just mention it. It's not sufficiently knowing and voluntary under Padilla. Right. But it also said it was a Fifth Amendment, a violation of the Fifth Amendment of the Constitution. So. Right. But it doesn't. Yeah. Yes, Your Honor. And I think, again, that's, that's a, it's a, this is a case that does not fit neatly into a box that we've already opened. This is kind of an oddball case, both because he had gone through multiple stages of different, of civil and criminal proceeding when it came up. And because as, as Judge Harris already mentioned, this wasn't raised as it normally is in the immigration context. It was raised in the criminal context. It's not retroactive, right? So it just seems like this case maybe doesn't present hard questions that others might, because this, I mean, his plea, at least as far as the state MAR court is concerned, the, the, the, the problem, the infirmity identified with the plea doesn't actually render it constitutionally invalid even today. Right. But the court, the state court rule, it did render it constitutionally invalid. It doesn't mean that they were right. But it's not retroactive. It doesn't mean that they were right, Your Honor. But that, that, that position still stands. I mean, nobody, that, that state court has the. Yeah, it may stand for purposes of the state court process, but how does that, how does that impact our ability to look behind that for purposes of your issues on appeal with respect to. Your Honor, I would look. Oh, I apologize. Judge Diaz. There are cases where Padilla has been effectively applied retroactively. It's not retroactive application of the relief in Padilla. So nobody is saying, please give me the Padilla relief. But I, I would know Reyes-Torres versus Holder, which is a ninth circuit, 2011 case. In that case, a state drug conviction from 2007 was vacated due to a failure to inform of the immigration consequences. That's obviously a civil case, an immigration case. But it puts its finger, I think, directly on one of the questions we already discussed, which is because that person didn't have the chance to raise it during the immigration process and that, and it was vacated for that reason, this, this immigration consequence that they were engaged in. The court said it could not be used as the basis for a removal. So, and, you know, the standard is, if anything, lower in that context. You know, the court reviewing that would say it's clear and convincing evidence if the, if the government has a burden in an immigration contest and it's not a criminal case. The, the, the, the petitioner there doesn't have the protections that Mr. Moreno-Tapia does. So I would say if anything, it's a higher level of scrutiny here. And just because Padilla isn't retroactive, this court doesn't need to apply Padilla, to be clear. I mean, this court doesn't need to touch Padilla. The, the underlying violation is acknowledged. There's no question but that Mr. Moreno-Tapia's case at the state court level was defective. The question before this court is, okay, so he's, he has a constitutional invalidated conviction. He has a, a expedited review with absolutely no opportunity for administrative review or, or an opportunity to develop a legal record beforehand. And now we have to ask the question, can that, which is his only conviction, now vacated, can that stand? Can that be used as the basis for a criminal charge in federal court? And the, the simplest way to articulate his argument is where that conviction is so tainted and where the process was so defective, was so insufficient, a criminal conviction, a criminal sanction should not be based on a conviction like that. This is not a case where there was a, a number of prior convictions. Maybe this just seems semantic to you, but his, the current prosecution is not based on the conviction. It's based on the illegal re-entry after deportation, right? It, it's No, the conviction is an element of the offense. I mean, without that conviction, there is no, you know, there's a, there, it, because, that's why the statute, that's why 1326D exists, is because the, the, the, not the conviction, I'm sorry, the, the removal is an element of the offense. And so, yes, the But I understand that, but so, so what, he is being prosecuted for re-entering after having been removed. It, it, it's not resting on the conviction. It's resting on the fact that But without the conviction, there is no removal. I understand. It's the only basis for his removal. I understand that. You can trace it back, but I mean, I think what he was supposed to do, right, is get the conviction vacated, reopen the deportation proceedings, and then come back in. But the, the issue with that, again, is that he was not afforded any meaningful opportunity to do that. If I, I'm, I see I'm out of time, but I wanted to respond to that question. And that's, that's the crux of it, is the connection between the constitutionally tainted conviction and the lack of meaningful process for attacking it during the removal process, which would have been, ideally, the best time to do it. But again, this didn't come But you say what was wrong with the process. The reason the process was insufficient is that he didn't know then about his PDEA claim, right? That's why, I mean, that's why the process was insufficient, that he didn't yet know about the PDEA claim. That's why, I mean, again, it's more than just that the process was insufficient at that point. There was a violation of his constitutional right to a knowing involuntary plea. I mean, he, he, he didn't, he never reviewed his written plea agreement. Okay. Thank you. Thank you, Your Honor. Let's hear from the government. Yes, sir. May it please the court, opposing counsel, good morning. My name is Anand Ramaswamy and I represent the United States. This appeal concerns the use of vacated convictions in the subsequent federal prosecution, and specifically what is seen as an exception for constitutional defect. I know the discussion so far this morning has been on the collateral attack on the deportation order, but I want to address, as it affects all three issues of the appeal, the claim that there is an exception for constitutional defect. In his brief on page 33, the appellant cites the First Circuit in Luna Diaz as holding that there is an exception for convictions obtained by constitutional defect in the context of constitutional defect. This is not referred to the holding, but to a footnote, specifically footnote 5, and it omits a couple of critical things. First, that the First Circuit did not reach that issue. They stated the instant case does not require us to decide whether allowing the guideline enhancement in three limited circumstances might in some limited circumstances raise constitutional due process claims. So Counsel, do you think we have to reach that question here? I do not, Your Honor. And why not? Well, this Court's examination of the underlying claim of infirmity would show that there is no constitutional defect. Referencing the A.T.N. v. Lynch case in which this Court had the opportunity to look at, in a different context, the elements of a state offense as presented a legal issue. I would argue that this Court can't simply be limited by how the order of vacatur is captioned by the state court, that it's looking at it for a federal purpose. And for that reason, and the documents are in the record, the Court has the opportunity to look and see that Padilla is not merely a side issue, not merely mentioned. It's the only case cited in the motion to vacate, and the only case cited in the order. But nowhere in the motion is it cited that Padilla is not retroactive. It is couched as a Fifth Amendment claim at that point. On the reply brief, it states that there are a host of other rights, which the appellant did not know about. But reading of the record, there is direct references to constitutional rights involved. And throughout the argument to the District Court and this Court, the only violation cited is Padilla. Now, returning to the defendant's opening brief, he states that this exception, and this case fits squarely into the exception expressly carved out by the First Circuit. Again, that reference is only a footnote and not a holding. And then states that this Court has found that this Court follows Luna-Diaz and has repeatedly held that there is an exception for constitutional violations. And for that premise, he cites two unpublished cases, this Court in Moran-Rosario and an unpublished District Court case. And this Court in Moran-Rosario did quote Luna-Diaz, including that limiting language. And Judge Eagles recognized this on page 171 of the Joint Appendix when she stated that it's in a footnote, basically. It's a throwaway. Counsel, can I just sort of try to sharpen this up a little bit for me? What if the State MAR order, what if this hadn't been a Padilla violation? What if the State Court had found that he was not, he had no right to counsel, he was not provided counsel during the plea proceedings at all? He was uncounseled. Then what? Well, the uncounseled conviction by existing law would be similar to Lewis. Lewis didn't have a vacated conviction, Lewis v. United States. Could we look at that? Would it then be permissible? I think it would, to the extent that Luna-Diaz foreshadows the outer limits of the guidelines reach on vacated convictions, I would say yes. Yes, Your Honor. Yes, it would be impermissible to rely on it, or yes, it could still be relied on? It would be a question for the Court, because that is the issue. I know it would be. How do you think it should be answered? A completely uncounseled conviction? Correct. Well, that relies on, in that hypothetical, which is different than this. I don't understand. I'm just trying to figure out what rule you want. I don't, in that hypothetical that is different than this, I think that if the Court were to announce those same three exceptions cited in Luna-Diaz, constitutional infirmity, egregious error of law, or determination of law. Does the government have a position as to whether, if someone enters an uncounseled guilty plea, that conviction can be used as the basis for an enhanced sentence in a later proceeding? Is there a position on that? An uncounseled guilty plea, it would appear, would constitute a constitutional violation. It would, yes. And so, because it would be a constitutional infirmity, is it permissible to look at that now vacated conviction on constitutional grounds in sentencing going forward? Does the government have a position on that or not? I, well, it seems that there should be reasonable limits on the use of those convictions. Yes, Your Honor. But as to those limits, that's not yet been developed. Okay. And can I ask, I'm sorry, but what about the prosecution itself, putting to one side sentencing? Would that be grounds for a collateral attack in a prosecution for illegal reentry if the original removal rested on a conviction that had been vacated for want of counsel? Well, I guess the question would be, would that fact be before the prosecution or merely the fact of the conviction? How would the prosecution know that it was an uncounseled conviction? What if it was exactly the facts of this case, except that that MAR order says, I'm vacating your conviction because you were not given a right to counsel? Well, then that wouldn't be the same facts. I'm sorry. The posture would be exact. I must, I'm sorry, I'm not being clear. Everything is the same about this case, except the reason the conviction was vacated was because the petitioner was not granted the assistance of counsel when he pled guilty. Then that's a Fifth Amendment, that would be a constitutional violation. It would. So then would it be permissible to prosecute him for illegal reentry, given that the original removal rested on a conviction that was unconstitutionally obtained? I don't, I believe it would be permissible, but not the right decision, if that makes sense. But you do not, okay. But it would be constitutionally permissible, in your view. Constitutionally permissible. No, I don't, I don't believe you could, you could base a 1326 prosecution, but, but the prosecution is based on removal. It's not based on a conviction. Right. That's why, that's why I think this is actually a hard question, but I was hoping you'd have an answer. I'm sorry then. Let me address that again. There's a penalty provision of conviction in 1326B that relates to the aggravated felony conviction. In the, in the hypothetical posed by the court of an uncounseled conviction, I don't think it would, it would prohibit prosecution for 1326, but it may affect the statutory sentence from two years to 20. Counsel, can I ask you about the impact of Etienne in this case? As I recall, the defendant did respond to the submission of the 28J letter, and since you're here arguing the merits, it doesn't appear that you're conceding that Etienne resolved this, resolves this case. Can you tell me why it doesn't? Because Etienne involved a determination of a legal issue, not a factual issue. And that raises this question. Is it a legal issue or factual issue whether or not the looking at Lewis, it looks at not the reliability of the conviction, but the fact of the conviction. And the determination of whether or not he'd been convicted is a factual conviction. Etienne, Etienne states that there was no opportunity to raise the legal issue of whether the crime constituted an aggravated felony because of the limited options on this check box. But this is really a factual issue, and Judge Eagles addressed this in her order on page 166. What's the factual issue? Well, before the court, I'm sorry, before the immigration authorities, is have you been convicted, is the person convicted of an aggravated felony? Well, he was convicted of an aggravated felony. You're talking about Etienne now. Oh, you're talking about this case. Yes, Your Honor. Go ahead. Yes. It's not whether or not this is an aggravated felony. It's not a legal issue of determining the elements of the offense and comparing it to the federal law and to see if it's an aggravated felony. It's a question of were you convicted of an aggravated felony or not? And that's not a legal issue. That's a factual issue. It's one the defendant was able to in the motion for appropriate relief, and he was convicted and remained convicted until that was granted. So that was not, I would distinguish it from Etienne on that legal versus factual issue. Well, that may be partially right, but the reason why the conviction was improper, at least because there was a violation of his rights with respect to advice as to immigration consequences, that strikes me as a legal question. Well, this gets to what was in the government's brief about Padilla. At what point does this become a Fifth Amendment issue when Padilla dealt with a Sixth Amendment issue? And if we're limited to how the state court captions its relief, then it seems that we create effectively a means to make Padilla retroactive. That for whatever reason, if you couch it as a Fifth Amendment violation, even though Padilla deals with the duties of counsel to advise on immigration violations under the Sixth Amendment, it's never been clear how that implicates his Fifth Amendment knowing involuntary. And furthermore, that notice of intent, which is given 30 days after the state conviction, 30 days, and it's a notice of intent to remove. So if the defendant, the appellant is contesting that he did not know he would be deported, that within 30 days he does know. And that's by the nature of the notice of intent and does nothing. And Judge Eagles framed this looking at Roberson and Lewis as the question presented. Did the defendant have the opportunity to challenge the conviction prior to the act? And he did. And he had 13 more months while in state custody before they re-approached him with the same form, at which point he waived. I think the bright line, the need for the bright line rule as stated in Lewis, and in other cases looking at civil disabilities imposed by criminal convictions, the First Circuit and Roberson, and this court in Caho cited by the District Court, look at the fact of the conviction. And to have a question as to the reliability within this case in gender uncertainty as to whether or not the person has to do or has to comply with the act that's required, in this case, not remaining. I'd point out in the Joint Appendix, page 151, counsel for the appellant states, it's not that he didn't know at the time. We're not contesting that factually. He had knowledge of the prohibition. And then the violation. In that case, Judge Eagles' reasoning relying on Lewis and Roberson, we'd say is well-founded. And the defendant's position that there is some exception here is based in dicta. And it has no legal basis. Judge Eagles, I want to address the collateral challenge. Judge Eagles found that the defendant did not meet the first two requirements for the collateral challenge, the exhaustion requirement. And the defendant would argue he had no opportunity to meet that. And this goes back to the, he didn't know he should have claimed this. Well, that argument, I'd say, is distinct from other arguments such as the court in Etienne looking at legal versus factual disputes. And the other case decided by the appellant for the proposition that you have no opportunity in this circumstance. Let me go back to that. So he says, he tells the hearing officer, I haven't been convicted. It's an improper conviction. And if you say it's a factual challenge, and I suppose someone pulls out the record of conviction and says, sure, you've been convicted. At that point, the challenge has to be, well, the conviction may have been, looks facially valid, but in fact it was improper because it was obtained in violation of my rights to have notice of the immigration consequences of that conviction. That's a legal question, not a factual question. Etienne tells us that those legal challenges are not, can't be, a petitioner doesn't have the ability to make those legal challenges in this expedited removal process. So why isn't the first prong satisfied here? Because this is looking at the reliability. There's a presumption of reliability, regularity with the conviction. And Judge Eagle stated that there was no duty for the immigration officer, for instance, to advise him that the conviction, maybe he should challenge that conviction. That decision regarding the notice at that stage is not one that's suited for the immigration officer. It's suited for the court that sentenced him, but it's rather a factual question. Yes, no, have you been convicted? And Etienne is different, as it had to do with the legal issue of the implications of aggravated felony, or a legal issue not suited. But as to the immigration officer, looking at the four requirements and the notice of intent is simply looking at, have you been convicted of an aggravated felony? Now, the counsel raises additional issues for the first time on appeal, and to the extent this court may consider those, I would point two things out. He does state in his brief on page 22 that the government, and correctly states, bears the burden of the knowing and voluntary belief that the defendant did sign the waiver, and that the government offered no evidence to meet this burden. But I'd point out in the joint appendix, page 125, when the court notes that evidence is required in such a hearing as this, the appellant states, I'm not sure that we need an evidentiary hearing. And further states, there wouldn't be any other evidence, so I think mostly an evidentiary hearing would be authentication. So, in effect, it waived the presentation of evidence by the government, because the issue at that point is what block is checked, what subsection is filled in, and the DHS discretion in putting someone in type of removal. If this court's considering those, be remanded on those issues for finding a fact, but I don't believe that's necessary. As to the enhancement under Luna-Diaz and this court's unpublished opinion, citing Luna-Diaz and Moran-Rosario, the relevant time is the time of deportation, not re-entry. We would contend that the 12-level enhancement of 2L1.2 is properly applied by the district court. That the defendant has not met the requirements to collaterally attack his deportation order, and Judge Eagles did not reach the third requirement of prejudice, she notes, but states that the test would have been, would he have been deported had the conviction not been vacated, not would he have been deported if he had not pled guilty. And that's not an issue addressed, she stated, that's not an issue the district court stated was addressed by either side and did not reach it. But as to the review of the vacater in this case, even if this court were to follow the footnote foreshadowing certain limited circumstances in which a constitutional violation, a conviction obtained by constitutional violation, might implicate due process concerns, we would state here it's simply not met. Because it's entirely predicated on Padilla, and Padilla remains a collateral consequence, and at this time the appellant was charged, pled guilty, convicted, and removed prior to the Padilla decision. And Chaidez, stating it is not retroactive, has no opportunity to avail himself of Padilla. If there is no exception, as would appear it's only been foreshadowed, this court on de novo review would have the opportunity to state there is no constitutional error in looking at all the documents before it. Otherwise, the defendant has the opportunity to effectively make Padilla retroactive in this case. Thank you, your honors. Thank you, your honor. Just real quickly, I want to address Lewis. I think it's a distracting element in the case only because Mendoza-Lopez, which 1326d is based on, expressly stated that to the collateral attack. I think there is some analogic applicability of Lewis in the guideline context where you're talking about the timing of the violation. But in terms of the collateral attack, Lewis just has no bearing on that. The 922G doesn't include a collateral provision to attack one of the elements. And another thing I wanted to point out is there isn't a duty in the government to inform a petitioner of any potential relief that they would have had. And that is actually the source of many violations in the context of the cases that Judge Harris was raising earlier, making the distinction between the underlying conviction being in the criminal process that precedes the immigration process versus in the immigration process itself, which is the Etienne example. So there are a lot of duties. There are a lot of protections built into that that would have actually come up. And I think Judge Diaz's point is exactly the point that maybe I was inartfully trying to make before, which is it is only factual questions. And those factual questions are not subject to any adversarial process. The government says that this is a If what you're saying is you can only raise factual issues before the deportation officer, I think that squarely recommends finding for the appellant in this case, because there are clear legal issues that the defendant's raised, whether or not he prevails on them. And it's clear from Etienne and other cases that those legal issues had no opportunity to be heard after the Are you, I don't think you've made this argument, are you saying that your client was put on the brought before an immigration judge as opposed to this expedited process? Your Honor, that is part of our argument. And there's no legal basis to say as a matter of statute or as a matter of regulation, he should have been there. But that's part of the point is there is no guidance, no discretion, no nothing, no policy on who gets put into expedited removal versus who gets put into a more extensive removal. He qualifies for the expedited removal as an aggravated felons get put into the full removal process. Did the district court address that part of your claim? They did not, Your Honor. But it was raised in front of the district court? Your Honor, I would have to think about that. I don't think we discussed that issue in front of the district court. And again, that was, I mean, that is a matter of sort of the arcana of immigration law. And so it points again to the fact that in an aggravated felony context, where the person has an enormous amount riding on this, and I, you know, we're not trying completely to run away from Padilla. I think Padilla stands for the proposition that loss of status is an enormous prejudice. That's why the Supreme Court ruled the way it did, that there is a lot riding on this, that something as important as that should not be subject to a process that is either constitutionally tainted or arbitrary and capricious. I just want to make sure I'm remembering the chronology. The removal proceedings were before Padilla was decided, right? His removal proceedings? Yes. Yes. His conviction was in 2000. He was charged in 2006, convicted in 2007, removed in 2008. Okay. Thank you very much.
judges: William B. Traxler Jr., Albert Diaz, Pamela A. Harris